UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: VIOXX
     PRODUCT LIABILITY LITIGATION

MARCUS ROSENLEHNER
15508 Owens Glen Terrace
North Potomac, MD 20878

And                            Civil Action No:

KAREN ROSENLEHNER
15508 Owens Glen Terrace
North Potomac, MD 20878

       PLAINTIFFS

v.

MERCK & CO., INC.
619 One Merck Drive
Whitehouse Station, NJ 08889

       DEFENDANT

## COMPLAINT
### (Product Liability – Wrongful Death)

     COME NOW Plaintiffs, by and through his undersigned attorneys, and for his Original Complaint against Defendant, MERCK & CO., INC., states the following:

     This is a proceeding brought by the Plaintiffs seeking damages for personal injuries and economic damages suffered as a result of the defective and dangerous pharmaceutical product Vioxx®, which was manufactured, marketed, distributed and/or sold by Merck to the general public.

## I. PARTIES

### (Plaintiffs)

1.      Plaintiff, Marcus Rosenlehner, (hereinafter "Plaintiff") at all times relevant hereto was a resident of the State of Maryland who obtained Vioxx from a licensed Maryland physician and pharmacy.  Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.  Plaintiff Karen Rosenlehner, (hereinafter "Spouse") at all times relevant was married to Marcus Rosenlehner.

2.      Plaintiff was injured as a result of his use of Vioxx and therefore seeks, all such compensatory damages, punitive damages, all ascertainable economic losses, including, treble damages, attorneys' fees, reimbursement of the cost of obtaining Vioxx , reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx and all past and future lost income and earning capacity.  As more particularly pleaded below, Plaintiff maintains that the pharmaceutical drug, Vioxx, is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce, and lacked proper warnings as to the dangers associated with its use.

### (Defendant)

4.      The Defendant, Merck & Co., Inc. (hereinafter "Merck"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, New Jersey 08889.  Pursuant to Pretrial Order No. 15, Merck can be served with process by serving its designated agent for service, Ellen M. Gregg, Esq.,

Womble, Carlyle, Sandridge & Rice, PLLC, 2001 N. Main Street, Suite 300, Winston-Salem, North Carolina 27101.

5.    At all times relevant hereto, Defendant Merck was and continues to be engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug, Vioxx throughout the United States.

## II. JURISDICTION AND VENUE

6.    This Court has jurisdiction in this action pursuant to 28 U.S.C. §1332.    There is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.    Venue is appropriate in that Defendant is licensed to do business in the District of Columbia and regularly does business in the District of Columbia by distributing, marketing, selling and advertising Vioxx and several other pharmaceuticals medications and devices it manufactures.

## III. FACTS COMMON TO ALL COUNTS

8.    Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

9.    Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator

3

and an inhibitor of platelet aggregation.

10.     Defendant Merck submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

11.     Defendant Merck also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for oral suspension, at doses of 12.5 mg/ml and 25 mg/ml, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

12.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereinafter the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal.

13.     At the time the drug was approved by the FDA the labeling for rofecoxib stated, in the section entitled "Special Studies -- Upper Endoscopy in Patients with Osteoarthritis," "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic

gastroduodenal ulcers when comparing -VIOXX to placebo."

14.    The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) Effects -- Risk of GI Ulceration, Bleeding, and Perforation."

15.    Defendant Merck submitted sNDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the sNDA, Defendant Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999 through March 17, 2000.

16.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking naproxen 1000 mg/day, and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

17.    In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical

Association, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials, in* August 2000, page 3.

18.    Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealment. Merck engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

19.    Merck continued to profit from its scheme by withholding information from Plaintiff, the consuming public, and the health care industry. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld information concerning the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

20.    *On or about August 29, 2001,* the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al., showing what Merck had concealed that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke; and transient ischemic attacks") among Vioxx users in Merck's trials, including VIGOR, at a

95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., et *al., Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors, J.A.M.A. 286:8,* 954-959, Aug. 22/29,2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

21. In the JAMA study, the authors stated that "by decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotiic thromboxane A2 and. antithrombotic PFI2, potentially leading to an increase in thrombotic cardiovascular events." *Id. at 957.* In a follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascalar and thrombotic events." Bing, R., & Lomnicka, M*., Why Do CycloOxygenase-2 Inhibitors Cause Cardiovascular Events?,* J.A.C.C., 39:3, Feb. 6, 2002. This is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et *al., Role of Prostacyclin in the Cardiovascular Response to Thromboxane R2, Journal of Science, V. 296:539-541, Apr. 19, 2002.*

22. On September 17, 2001 Thomas W. Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin,

President and CEO of Defendant Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets"

23.    The Warning Letter stated that Defendant Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus misrepresents the safety profile for Vioxx." The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have four to five fold increase in myocardial infarctions (MI's) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (Naproxen).

24.    The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant Merck that supports the FDA's issuance of the Warning Letter, and makes the following **"Conclusions and Requested Actions:"**

> The promotional activities and materials described above minimize the potentially serious Cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx / Coumadin drug interaction, omit crucial risk information associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance.

> Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.

> This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also

include:

Immediately ceasing all violative promotional activities,and the dissemination of violative promotional materials for Vioxx.

Issuing a "Dear Healthcare Provider" letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

A written statement of your intent to comply with "1" and "2" above.

25.    On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

26.    The revised labeling further states that the administration of Vioxx 5O mg was associated with a higher-incidence of gastrointestinal symptoms.

**Clinical Studies in OA and RA with VIOXX 50mg (Twice the highest dose recommended for chronic use)**
In OA and RA clinical trials which contained VIOXX 12.5 or 25 mg as well as VIOXX 50mg, VIOXX 50mg was associated with a higher incidence of gastrointestinal symptoms (abdominal pain, epigastric pain, heartburn, nausea and vomiting). Lower extremity edema, hypertension, serious adverse experiences and discontinuation due to clinical adverse experiences compared to the recommended chronic doses of 12.5 and 25mg (see DOSAGE AND ADMINISTRATION).

27.    Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the Vioxx labeling, outlines the changes to the Vioxx labeling.

28.    The revised "Patient Information" sheet does not add any

information about the results of the VIGOR study."

29.    The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

30.    Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential gastrointestinal side effects of Vioxx.

31.    Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that Vioxx may cause serious gastrointestinal side effects, Defendant Merck has concealed and/or downplayed the dangers associated with Vioxx. In its 2001 Annual Report, for example, Defendant Merck states:

> The Company also noted that a number of federal and state lawsuits involving individual claims as well as purported class actions, have been filed against the Company with respect to *Vioxx*.... The lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are completely without merit and will vigorously defend them.

32.    Further, in its January 23, 2001 8-K filing with the Securities and Exchange Commission, the Defendant fails to mention the cardiac and cardiothrombotic findings of the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our five key products, VIOXX, ZOCOR, COZAARIHYZAAR*, FOSAMAX and SINGULAIR, drove Merck's performance for the year and created a powerful platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 200 G and 61% for the fourth quarter.
>
> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. **VIOXX,** a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, **VIOXX** has become the world's fastest growing branded prescription arthritis

medicine, and it is already Merck's' second largest-selling medicine. In the United States, **VIOXX** now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. **VIOXX** achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.

A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which **VIOXX** reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that **VIOXX** significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

33.    Despite the foregoing, Defendant Merck has continued to represent to consumers that Vioxx is safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug. The Defendant has also downplayed any potential gastrointestinal side effects of the drug, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

## IV. FRAUDULENT CONCEALMENT

34.    Defendant Merck is estopped from asserting a statute of limitations defense because it fraudulently concealed its wrongful conduct from Plaintiff and the general public. Defendant Merck had actual knowledge of the defective nature and the various studies, including its own, which had shown concerns over the cardiovascular safety profile of Vioxx® (Rofecoxib). Defendant Merck failed to conduct adequate research on its product to establish its safety and efficacy.    Further,    Defendant    Merck    had    actual    knowledge    of    its

11

misrepresentations, negligence, breach of warranties, and false, misleading deceptive, and unconscionable conduct. Defendant Merck, however, continued to perpetrate its wrongful conduct with the intent and fixed purpose of concealing its wrongs from Plaintiff and the public at large.

## COUNT I

### STRICT PRODUCTS LIABILITY — DEFECTIVE DESIGN AGAINST MERCK

COME NOW Plaintiffs and for Count I of their complaint against defendant Merck state the following:

35.     Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

36.     Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx® which it knew would be used by Plaintiff and others.

37.     At the time Vioxx® was manufactured and sold to Plaintiff by Merck, it was in a defective condition and unreasonably dangerous when put to its reasonably anticipated use, and subjected its users to increased risks of heart attacks, strokes, and other illnesses which exceeded its benefits, and for which other safer products were available.

38.     Alternatively, when Vioxx® was manufactured and sold to Plaintiff by defendant, it was defective in design and formulation, making use of it more dangerous than other drugs for pain relief.

39.     The Vioxx® sold to Plaintiff reached Plaintiff without substantial

change. Plaintiff was unaware of the dangerousness of the product.

40.    Plaintiff ingested Vioxx® without making any changes or alterations and used it in a manner reasonably anticipated by Merck.

As a direct and proximate result of the defective and dangerous design of Vioxx® Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.  Merck knew the defective condition and danger of Vioxx®, yet continued to advertise, market, distribute and sell Vioxx® to Plaintiff and the general public, showing complete indifference to, or conscious disregard for, the safety of users of Vioxx®, including Plaintiff.  Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the Plaintiff so as to entitle the Plaintiff to punitive damages.

WHEREFORE,  Plaintiffs demand judgment in their favor and against Merck for:

A.    A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx; all past and future lost income and loss of earning capacity, pain and suffering sustained in the past and which is continuing and will continue into the future, permanent injury resulting in permanent physical and mental disability as well as mental and emotional distress and anguish, treble damages and attorneys' fees,

B.    Costs of suit;

C.    Pre judgment and post-judgment interest;

D.    Punitive damages in the amount of Fifty Million Dollars ($50,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct; and

E.    Such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II

## STRICT PRODUCTS LIABILITY -- FAILURE TO WARN AGAINST MERCK

COME NOW Plaintiffs and for Count II of their complaint against defendant Merck state the following:

41.    The Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

42.    At the time Vioxx® was manufactured and sold to Plaintiff by Merck in the course of its business, it was in a defective condition and unreasonably dangerous when put to its reasonably anticipated use, and subjected its users to increased risks of heart attacks, strokes, and other illnesses which exceeded its benefits, and for which other safer products were available.

43.    The users of Vioxx®, including Plaintiff, did not have knowledge of its defective and unreasonably dangerous condition, which subjected them to increased risks of a heart attack and stroke and other cardiovascular conditions which exceeded its benefits, and for which other safer products were available.

44.    The Vioxx® manufactured and supplied by Merck was unaccompanied by proper and adequate warnings regarding all possible side

effects associated with the use of yioxx®, and the comparative severity and duration of the adverse effects.

45.     The warnings given by Merck did not accurately reflect the symptoms, type, scope or severity of the side effects.

46.     Furthermore, Merck failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen and Mobic were safer alternatives.

47.     Finally, Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx®. After Merck knew or should have known of the risk of injury from Vioxx® use, it failed to provide adequate warnings to users or consumers of Vioxx®, including Plaintiff, and continued to aggressively promote Vioxx® to doctors, hospitals and directly to consumers, including Plaintiff.

48.     Plaintiff used Vioxx® in a manner reasonably anticipated by Merck. As a direct and proximate result of Merck's failure to warn of the potentially severe side effects of Vioxx®, Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.

49.     Merck knew the defective condition and danger of Vioxx®, yet continued to advertise, market, distribute, and sell Vioxx® to Plaintiff and the general public, showing complete indifference to, or conscious disregard for, the safety of users of Vioxx®, including Plaintiff.   Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the Plaintiff so as to entitle the Plaintiff to punitive damages.

WHEREFORE,   Plaintiffs demand judgment in their favor and against

Merck for:

A.      A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx; all past and future lost income and loss of earning capacity, pain and suffering sustained in the past and which is continuing and will continue into the future, permanent injury resulting in permanent physical and mental disability as well as mental and emotional distress and anguish, treble damages and attorneys' fees,

B.      Costs of suit;

C.      Pre judgment and post-judgment interest;

D.      Punitive damages in the amount of Fifty Million Dollars ($50,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct; and

E.      Such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III
## NEGLIGENT DESIGN AGAINST MERCK

COME NOW Plaintiffs and for Count III of their petition against defendant Merck state the following:

50.      The Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

51.      Defendant Merck designed, produced, manufactured, and injected

Vioxx® into the stream of commerce in the regular course of its business, knowing it would be used by Plaintiff and others.

52.    At the time Vioxx® was manufactured and sold to Plaintiff by Merck, it was defective in design in that it subjected users to increased risks of heart attacks, strokes, and other illnesses which exceeded its benefits, despite the fact that safer products were available.

53.    Alternatively, when Vioxx® was manufactured and sold to Plaintiff by Merck, it was defective in design and formulation in that it subjected users to increased risks of heart attacks, strokes, blood clots, and other cardiovascular disorders and other serious side effects, which made the use of Vioxx® more dangerous than other drugs for pain relief.

54.    Merck failed to use ordinary care to manufacture and/or design Vioxx® to be reasonably safe in that it increased the users' risks of heart attacks, strokes, blood clots, and other cardiovascular disorders and other serious side effects which exceeded its benefits despite the fact that safer products were available.

55.    In addition, Merck failed to use ordinary care by failing to perform adequate testing and study or properly analyzing the findings of the VIGOR study. Such adequate testing, study or analysis of VIGOR would have shown that Vioxx® possessed serious potential side effects and its dangerous and defective design and condition, which would have allowed Merck to remove Vioxx® from the market months, if not years before its recall on September 30, 2004, which delay caused increased risk of injuries and damages to Vioxx® users, including

Plaintiff.

56.    Finally, Merck failed to use ordinary care by failing to act properly on adverse reports it received about Vioxx®, and failed to properly study Vioxx® pre-market and analyze and follow-up on its studies as well as other studies regarding the dangers and defects of Vioxx®. As a direct and proximate result of the defective and dangerous design of Vioxx®, Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.

57.    Merck knew the defective condition and danger of Vioxx®, yet continued to advertise, market, distribute, and sell Vioxx® to Plaintiff and the general public, showing complete indifference to, or conscious disregard for, the safety of users of Vioxx®, including Plaintiff.  Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the Plaintiff so as to entitle the Plaintiff to punitive damages.

WHEREFORE,  Plaintiffs demand judgment in their favor and against Merck for:

A.    A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx; all past and future lost income and loss of earning capacity, pain and suffering sustained in the past and which is continuing and will continue into the future, permanent injury resulting in permanent physical and mental disability as well as mental and emotional distress and anguish,

treble damages and attorneys' fees,

B.      Costs of suit;

C.      Pre judgment and post-judgment interest;

D.      Punitive damages in the amount of Fifty Million Dollars ($50,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct; and

E.      Such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IV
## NEGLIGENT FAILURE TO WARN AGAINST DEFENDANT MERCK

COME NOW Plaintiffs and for Count IV of their petition against Merck state the following:

58.     Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

59.     Defendant owed a duty to users of Vioxx®, including Plaintiff, to warn of any dangerous defects or side effects, including unreasonable and dangerous risks, reactions, and illnesses, as well as a duty to provide adequate post market warnings as it learned of Vioxx®'s substantial defects and dangers, including increased risks of heart attacks, strokes, and other serious illnesses.

60.     Defendant breached its duty of reasonable care owed to Plaintiff in that defendant failed to:

a.      Conduct sufficient testing which, if properly performed, would have shown that Vioxx® had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious illnesses, and warn users of those risks; and or

19

        b.    Include adequate warnings with the marketing, distribution, and sale of Vioxx® that would alert users to the potential risks and serious side effects of Vioxx®; and/or

        c.    Warn Plaintiff that use of Vioxx® carried increased risks of death or permanent disability from heart attacks, strokes, blood clots, and other cardiovascular disorders and other serious side effects; and/or

        d.    Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx® from third parties as well as its own studies; and/or

        e.    Warn physicians and hospitals who treated  Plaintiff that prescribing Vioxx® to  Plaintiff carried increased risks of death or permanent disability from heart attacks, strokes, blood clots, and other cardiovascular disorders and other serious side effects; and/or

        f.    Issue other appropriate warnings to Plaintiff and the health care industry in general.

63.    Defendant knew or by using ordinary care should have known that Vioxx® caused unreasonably dangerous risks or serious side effects, of which the general public would not be aware. Defendant nevertheless advertised, marketed, and promoted Vioxx® to the general public, the health care industry and Plaintiff, knowing there were safer methods and products for pain control, without warning the general public, health care industry and Plaintiff, of the dangerous condition of Vioxx®.

64.    As a direct and proximate result of defendant's negligence and breaches of its duty of reasonable care,  Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.

65.    Merck knew the defective condition and danger of Vioxx®, yet

continued to advertise, market, distribute and sell Vioxx® to Plaintiff and the general public, showing complete indifference to, or conscious disregard for, the safety of users of Vioxx®, including Plaintiff. Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the Plaintiff so as to entitle the Plaintiff to punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Merck for:

A.   A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx; all past and future lost income and loss of earning capacity, pain and suffering sustained in the past and which is continuing and will continue into the future, permanent injury resulting in permanent physical and mental disability as well as mental and emotional distress and anguish, treble damages and attorneys' fees,

B.   Costs of suit;

C.   Pre judgment and post-judgment interest;

D.   Punitive damages in the amount of Fifty Million Dollars ($50,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct; and

E.   Such other and further relief as the Court deems just and proper under the circumstances.

## COUNT V
## NEGLIGENCE PER SE

COME NOW Plaintiffs and for Count V of their petition against Merck state the following:

66.    Plaintiff incorporates all allegations in the preceding paragraphs as if fully set forth in this Count.

67.    Defendant had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

68.    Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law and other applicable laws, statutes and regulations.

69.    Plaintiff, as a purchaser and consumer of Vioxx, is within the class of persons the statutes and regulations described above are designed to protect and Plaintiff' injuries are of the type of harm these statutes are designed to prevent.

70.    Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331 and constitutes a breach of duty subjecting Defendant to civil liability for all damages arising therefrom under theories of negligence per se.

Defendant failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as the Plaintiff,

thereby making Defendant negligent per se:

(1)    The labeling lacked adequate information on the use of the drug Vioxx [21 C.F.R. Section 201.56(a) and (d)];

(2)    The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitations, thromboembolic events, primarily heart attacks and stroke, and other adverse medical conditions as soon as there was reasonable evidence of his association with the drug [21 C.F.R. Section 201.57(e)];

(3)    There was inadequate information for patients for the sage and effective use of Defendant's drug [21 C.F.R. Section 201.57(f)(2)];

(4)    There was inadequate information regarding special care to be exercised by the doctor for sage and effective use of Defendant's drug [21 C.F.R. Section 201.57(f)(1)]; and

(5)    The labeling was misleading and promotional [21 C.F.R. Section 201.56(b)].

71.    As a result of the violation of the statutes described above, Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.

WHEREFORE, Plaintiffs demand judgment in his favor and against Merck for:

A.    A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx; all past and future lost income and loss of earning capacity, pain and suffering sustained in the past and which is continuing and will continue into the future, permanent injury resulting in permanent physical and mental

disability as well as mental and emotional distress and anguish, treble damages and attorneys' fees,

B.      Costs of suit;

C.      Pre judgment and post-judgment interest;

D.      Punitive damages in the amount of Fifty Million Dollars ($50,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct; and

E.      Such other and further relief as the Court deems just and proper under the circumstances.

**COUNT V**
**DECEPTIVE TRADE PRACTICES ACT-AGAINST DEFENDANT MERCK**

Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

72.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of New Jersey consumer protection statutes when it represented, through advertising, warranties, and other express representations, that Vioxx had benefits or characteristics that it did not actually have. Defendant further violated Maryland and District of Columbia consumer protection statutes when it falsely represented that Vioxx was of a particular standard or quality when it was not. Finally, Defendant violated New Jersey, Maryland and District of Columbia consumer protection statutes when it advertised Vioxx with the intent to sell it as advertised, while concealing and suppressing facts material to the true characteristics, standards, and quality of Vioxx.

74.     Defendant's deceptive practices were specifically designed to induce

Plaintiff to buy and/or ingest Vioxx.

75.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein. Plaintiffs seek all damages, including treble damages, allowable by statute.

## COUNT VI
## FRAUDULENT MISREPRESENATION AGAINST DEFENDANT MERCK

COME NOW Plaintiffs and for Count VI of their complaint against defendant Merck state the following:

76.    The Plaintiffs reallege the allegations in the preceding paragraphs as if fully set out herein.

77.    Defendant misrepresented a number of facts to the general public, including Plaintiff and his treating physician(s) of Plaintiff, through direct-to-consumer advertising including: the potential serious cardiovascular findings that were observed in the VIGOR study; the Vioxx®/Coumadin drug interaction; crucial risk information associated with Vioxx®; and the safety of Vioxx®, including the representation that any cardiovascular and/or cardothrombotic side effects were not associated with the drug.

78.    These representations were false and made by defendant with knowledge of his falsity or ignorance of his truth or falsity.

79.    These representations were material to  Plaintiff and his treating physicians' decision to prescribe, request, ingest and/or maintain Plaintiff's prescriptions of Vioxx®.

80.    The defendant intended for Plaintiff and his treating physicians to

rely upon the material misrepresentations to induce Plaintiff to request Vioxx®
from his treating physicians and/or for Plaintiff treating physicians to initially
prescribe Vioxx® and continue to have Plaintiff take it.

81.    Defendant further intended that the health care industry, including
Plaintiff' treating physicians would prescribe Vioxx® to Plaintiff and furthermore
that they would discuss defendant's representations with other health care
providers in the industry, who would in turn prescribe Vioxx® to his patients in
reliance on the false and material representations of defendants.

82.    Plaintiff's treating physician and other health care providers, who
prescribed Vioxx® to the general public, including Plaintiff, were ignorant of the
falsity of defendant's representations as described above and Plaintiff relied upon
them in requesting prescriptions of Vioxx® to Plaintiff, and/or Plaintiff's treating
physicians discussing the benefits of Vioxx® with other health care providers,
who in turn prescribed Vioxx® for his patients, including Plaintiff.
Plaintiff's treating physicians, and other health care providers, who prescribed
Vioxx® to the general public, including Plaintiff, had a right to rely on the
truthfulness of defendant's representations regarding Vioxx®.

83.    As a direct result of defendant's fraudulent misrepresentations,
Plaintiff suffered a stroke and serious permanent injury and has been damaged
as alleged herein.

84.    Defendant's conduct, as described herein, knowing of the defective
condition and danger of Vioxx®, yet making fraudulent misrepresentations to
Plaintiff and/or Plaintiff's treating physicians was outrageous because of

defendant's reckless indifference to the safety of users of Vioxx®, including Plaintiff. Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the Plaintiff so as to entitle the Plaintiff to punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Merck for:

A.    A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical care costs related to his ingestion of Vioxx; all past and future lost income and loss of earning capacity, pain and suffering sustained in the past and which is continuing and will continue into the future, permanent injury resulting in permanent physical and mental disability as well as mental and emotional distress and anguish, treble damages and attorneys' fees,

B.    Costs of suit;

C.    Pre judgment and post-judgment interest;

D.    Punitive damages in the amount of Fifty Million Dollars ($50,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct; and

E.    Such other and further relief as the Court deems just and proper under the circumstances.

## COUNT VII
## FRAUDULENT OMMISSION/CONCEALMENT
## AGAINST DEFENDANT MERCK

COME NOW Plaintiffs and for Count VII of his complaint against defendant Merck states the following:

85.    The Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

86.    Defendant had superior knowledge of the risks and dangers of Vioxx®, as described herein. Such knowledge was not reasonably discoverable by Plaintiff and/or Plaintiff's treating physicians, health care providers, and the general public.

87.    Defendant had actual knowledge of the cardiothrombotic effects of Vioxx®. Despite having knowledge of the cardiothrombotic effects of Vioxx®, defendant engaged in a pattern and conduct of actively concealing and omitting this information when marketing and promoting Vioxx® to Plaintiff, Plaintiff's treating doctors, health care providers and to the general public in direct to consumer advertisements.

88.    At the time these omissions were made, defendant had knowledge of the substantial and significant cardiothrombotic effects of Vioxx®.

89.    Defendant failed to disclose to Plaintiff, Plaintiff's treating physicians, health care providers, and the general public, the true cardiothrombotic and other adverse health effects of Vioxx®. Merck downplayed the results of various studies, including his own, showing the cardiothrombotic effects of Vioxx® as set forth in the VIGOR study, and they withheld adverse

reports or gave incorrect information about the reports they received regarding the side effects of Vioxx®, such as heart attacks and strokes Merck further instructed his sales force to dodge and mislead doctors when asked about the cardiothrombotic effects of Vioxx®.

90.   Defendant's failure to disclose material facts constituted fraudulent concealment. Defendant sanctioned, approved and/or participated in the failure to disclose these material facts to Plaintiff; Plaintiff's treating physicians, the health care industry, and to the general public.

91.   Defendant knew the concealed/omitted material facts were unavailable to Plaintiff and Plaintiff's treating physicians and health care providers, yet Merck instructed its agents, servants, and employees to not disclose this material information in order to promote the sales of Vioxx®.

92.   Plaintiff exercised reasonable diligence in attempting to seek additional information regarding Vioxx® after hearing/receiving Merck's numerous direct to consumer advertisements by consulting with his treating physicians.

93.   The information not disclosed by defendant as described above, was not reasonably available to Plaintiff and/or his treating physicians and was not discoverable by Plaintiff and/or his treating physicians.

94.   The non-disclosed information, as described above, was material. Defendant knew it omitted material information and intended that Plaintiff and/or his treating physicians rely upon the omission.

95.   Plaintiff and/or his treating physicians were ignorant of the

undisclosed information as described above and had a right to rely on full disclosure of the risks and benefits of Vioxx® and were therefore reasonable to believe that no material facts were undisclosed by defendants.

96.    If Plaintiff and/or his treating physicians had known the omitted information, including all of the risks and dangers associated with Vioxx®, Plaintiff's physicians would not have prescribed and Plaintiff would not have taken Vioxx®.

97.    As a direct result of defendant's fraudulent concealment and/or omissions of material facts, including the dangers and risks of Vioxx® as described above, Plaintiff suffered a stroke and serious permanent injury and has been damaged as alleged herein.

98.    Defendant's conduct, as described herein, knowing of the dangers and risks of Vioxx®, yet fraudulently concealing and/or failing to disclose these material facts to Plaintiff and/or Plaintiff' treating physicians, was outrageous because of defendant's reckless indifference to the safety of users of Vioxx®, including Plaintiff.  Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the Plaintiff so as to entitle the Plaintiff to punitive damages.

WHEREFORE,   Plaintiffs demand judgment in their favor and against Merck for:

A.    A fair and just amount of actual compensatory damages in an amount to be proved at trial for all ascertainable economic losses, including, reimbursement for all past and future health and medical

care costs related to his ingestion of Vioxx; all past and future lost

income and loss of earning capacity, pain and suffering sustained

in the past and which is continuing and will continue into the future,

permanent injury resulting in permanent physical and mental

disability as well as mental and emotional distress and anguish,

treble damages and attorneys' fees,

B.    Costs of suit;

C.    Pre judgment and post-judgment interest;

D.    Punitive damages in the amount of Fifty Million Dollars

($50,000,000.00) to punish and deter Merck and others from

engaging in the same type of wrongful conduct; and

E.    Such other and further relief as the Court deems just and proper

under the circumstances.

### COUNT VIII
### LOSS OF CONSORTIUM

COMES NOW Plaintiff, KAREN ROSENLEHNER and for Count VIII of her

complaint against defendant Merck states the following:

99.    The Plaintiff realleges the allegations in the preceding paragraphs

as if fully set forth herein.

100.    At all times relevant to this Complaint, Karen Rosenlehner, has

been the lawful spouse of Marcus Rosenlehner.

101.    As a direct an proximate cause of Merck's negligence, and their

willful and wanton conduct and fraudulent misrepresentations and breaches of

implied and express warranties, Plaintiff, Karen Rosenlehner, has suffered damage to her marital relationship, including but not limited to, loss of companionship, affection, assistance and loss or impairment of sexual relations.

WHEREFORE, Plaintiff, Karen Rosenlehner demands judgment against Defendant Merck in the amount of Five Million Dollars ($5,000,000.00) in compensatory damages for the losses she has suffered to her marital relationship, including but not limited to, loss of companionship, affection, assistance and for loss or impairment of sexual relations with her husband. Additionally, Plaintiff, Karen Rosenhehner demands Punitive damages in the amount of Ten Million Dollars ($10,000,000.00) to punish and deter Merck and others from engaging in the same type of wrongful conduct that resulted in her husband's injuries.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,

Michael J. Miller, Esquire
Miller & Associates
105 N. Alfred Street
Alexandria, Virginia 22314
Phone: (703) 519-8080
Fax:    (703)519-8084
Attorneys for Plaintiffs


Jack H. Olender, Esquire
Jack H. Olender & Associates, PC
888 17th Street, NW
Washington, DC 20006
Phone: (202) 879-7777
Fax:    (202) 393-2245
Attorneys for Plaintiffs